# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RYAN KEETON, individually and on behalf of all others similarly situated | § § § | Docket No. __18-1876__ |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| FOUNDATION ENERGY MANAGEMENT, LLC | § § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

## ORIGINAL COMPLAINT

### I.   SUMMARY

1.   Ryan Keeton (Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Foundation Energy Management, LLC (Defendant) under the Fair Labor Standards Act (FLSA).

2.   Plaintiff and the other workers like him, regularly worked more than 40 hours a week.

3.   But Defendant did not pay them overtime.

4.   Instead of paying overtime as required by the FLSA, Defendant improperly classified Plaintiff and those similarly situated to him as independent contractors and paid them a set amount for each well serviced with no overtime compensation.

5.   This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II.   JURISDICTION AND VENUE

6.   This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8. Defendant conducts substantial business operations in this District and Division.

9. Defendant's corporate headquarters is located in this District and Division.

### III.   THE PARTIES

10. Plaintiff worked exclusively for Defendant as a "Pumper" beginning in 2011 until May 31, 2018.

11. During his employment, Defendant paid Plaintiff a set amount for each well serviced with no overtime compensation and classified him as an independent contractor.

12. Plaintiff's consent to be a party plaintiff is attached as Exhibit A.

13. Plaintiff brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid a set amount for each well serviced by Defendant.

14. Defendant paid each of these workers a set amount for each well serviced and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All "Pumpers" who worked for, or on behalf of, Foundation Energy Management, LLC, who were classified as independent contractors during the last 3 years.**

16. **Foundation Energy Management, LLC** is a Texas limit liability corporation and may be served by serving its registered agent for service of process, Eddie W. Rhea, at 5057 Keller Springs Road, Suite 650, Addison, Texas 75001, or wherever he may be found.

### IV.   COVERAGE UNDER THE FLSA

17. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20. Defendant has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

21. Defendant's annual gross volume of sales has exceeded $1,000,000 in each of the past 3 years.

22. At all relevant times hereinafter mentioned, Plaintiff and the other Pumpers were engaged in commerce or in the production of goods for commerce.

23. Defendant treated Plaintiff (and indeed each of the Pumpers) as an employee and uniformly applied the "per-well basis" pay practice to Plaintiff and the other Pumpers.

24. Defendant's misclassification of Plaintiff and the Pumpers as independent contractors does not alter their status as employers for purposes of this FLSA collective action.

## V. FACTS

25. Defendant is the manager and operator of onshore oil and gas producing properties throughout the United States.

26. To provide services to many of its customers, Defendant employs oil field personnel, including "Pumpers," to provide oilfield services on its behalf.

27. Many of these individuals worked for Defendant on a "per-well basis" as Pumpers, were misclassified as independent contractors, and make up the proposed Putative Class.

28. Even if their job titles and precise job duties differed, Defendant subjected the Pumpers (including Plaintiff) to the same or similar illegal pay practices for similar work.

29. Specifically, Defendant classified all of the Pumpers as independent contractors and paid them a set amount for each well that they serviced, regardless of the number of hours that they worked that day (or in that workweek).

30. Defendant uniformly failed to pay overtime for the overtime hours the Pumpers worked.

31. For example, Plaintiff worked exclusively for Defendant as a Pumper from 2011 until May 31, 2018.

32. During the first two years of his employment, Defendant classified Plaintiff and the other Pumpers as W-2 employees. Thereafter, Defendant reclassified Plaintiff and the other Pumpers to 1099 independent contractors.

33. During his employment, Defendant classified Plaintiff as an independent contractor and paid him on a "per-well basis."

34. Defendant directed Plaintiff to work eight-hour shifts, seven days a week and required Plaintiff to be on call 24-hours a day.

35. Plaintiff worked well in excess of 40 hours each week while employed by Defendant, often for weeks at time.

36. The work Plaintiff performed was an essential part of Defendant's core business.

37. During Plaintiff's employment with Defendant while he was classified as an independent contractor, Defendant exercised control over all aspects of his job.

38. Defendant did not require any substantial investment by Plaintiff for him to perform the work required of him.

39. Defendant controlled Plaintiff's opportunity for profit and loss by dictating the days

and hours he worked and the rate he was paid.

40. Plaintiff was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

41. Plaintiff worked exclusively for Defendant from approximately 2011 until May 31, 2018.

42. Indeed, Defendant controlled all the significant or meaningful aspects of the job duties performed by Plaintiff

43. Defendant exercised control over the hours and locations Plaintiff worked, tools used, and rates of pay received.

44. Even though Plaintiff often worked away from Defendant's offices without the presence of a direct supervisor employed by Defendant, Defendant still controlled significant aspects of Plaintiff's job activities by enforcing mandatory compliance with Defendant's policies and procedures.

45. No real investment was required of Plaintiff to perform his job.

46. More often than not, Plaintiff utilized equipment provided by Defendant to perform his job duties.

47. Plaintiff did not provide the significant equipment he worked with on a daily basis. Defendant made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiff worked.

48. Plaintiff did not incur operating expenses like rent, payroll, marketing, and insurance.

49. Plaintiff was economically dependent on Defendant during his employment.

50. Defendant set Plaintiff's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Defendant.

51. Defendant directly determined Plaintiff's opportunity for profit and loss.

52. Plaintiff's earning opportunity was based on the number of wells Defendant scheduled him to service.

53. Very little skill, training, or initiative was required of Plaintiff to perform his job duties.

54. Indeed, the daily and weekly activities of the Pumpers were routine and largely governed by standardized plans, procedures, and checklists created by Defendant.

55. Virtually every job function was pre-determined by Defendant, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

56. The Pumpers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Defendant's policies, procedures, and directives.

57. Plaintiff performed routine manual and technical labor duties that were largely dictated by Defendant.

58. Plaintiff for Defendant from approximately 2011 until May 31, 2018.

59. Plaintiff was not employed by Defendant on a project-by-project basis.

60. In fact, while Plaintiff was classified as an independent contractor, he was regularly on call for Defendant and was expected to drop everything and work whenever needed.

61. All of the Pumpers perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

62. The Pumpers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

63. The Pumpers all worked in excess of 40 hours each week and were often scheduled to work 8 hour shifts for weeks at a time, while remaining on call 24-hours each day.

64. Instead of paying them overtime, Defendant paid the Pumpers on a "per-well basis" and misclassified them as independent contractors.

65. Defendant denied the Pumpers overtime for hours worked in excess of 40 hours in a single workweek.

66. The Pumpers were never paid on a salary basis. They never received any guaranteed weekly compensation from Defendant irrespective of days or hours worked (i.e., the only compensation they received was the well-rate they were assigned for all wells serviced in a single day or week).

67. Defendant's policy of classifying its Pumpers as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

68. It is undisputed that the Pumpers are working long hours in the oilfield.

69. Because Plaintiff and the Pumpers were misclassified as independent contractors by Defendant, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

70. Defendant's "per-well" system violates the FLSA because Plaintiff and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI. FLSA VIOLATIONS

71. As set forth herein, Defendant has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

72. Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Pumpers overtime compensation.

73. Defendant's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

74. Accordingly, Plaintiff and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII. COLLECTIVE ACTION ALLEGATIONS

75. The illegal pay practices Defendant imposed on Plaintiff were likewise imposed on the other Pumpers.

76. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

77. Numerous other individuals who worked with Plaintiff for Defendant as Pumpers indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

78. Based on his experiences and tenure with Defendant, Plaintiff is aware that Defendant's illegal practices were imposed on the members of the Class.

79. The Pumpers were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

80. Defendant's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Pumpers.

81. Plaintiff's experiences are therefore typical of the other Pumpers.

82. The specific job titles or precise job locations of the various members of the Class do not prevent class or collective treatment.

83. Plaintiff has no interests contrary to, or in conflict with, the members of the Class. Like each member of the Class, Plaintiff has an interest in obtaining the unpaid overtime wages owed under federal law.

84. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85. Absent this action, many members of the Class likely will not obtain redress of their injuries and Defendant will reap the unjust benefits of violating the FLSA.

86. Furthermore, even if some of the members of the Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

87. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

88. Plaintiff's claims are similar to the claims of the other Pumpers. Plaintiff and the other Pumpers sustained damages arising out of Defendant's illegal and uniform employment policy.

89. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

90. Even if the numbers of hours worked by each individual varies, the proof and method for calculating damages is common.

91. Further, there is no detraction from the common nucleus of liability facts.

## X.   JURY DEMAND

92. Plaintiff demands a trial by jury.

## XI.   RELIEF SOUGHT

93. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. An Order designating the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff and the FLSA Class for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
State Bar No. 24014780
**Lindsay R. Itkin**
State Bar No. 24068647
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
litkin@ mybackwages.com

**AND**

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**