# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RYAN KEETON, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>FOUNDATION ENERGY MANAGEMENT, LLC,<br><br>    Defendant. | Case No. 3:18-cv-01876<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## KEETON'S REPLY IN SUPPORT OF CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

**Michael A. Josephson**
Texas State Bar No. 24014780
**Lindsay R. Itkin**
Texas State Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 325-1100
Fax: (713) 325-3300
mjosephson@mybackwages.com
litkin@mybackwages.com

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

**A.     Summary**

Keeton seeks to represent a narrowly tailored class of Pumpers who worked for, or on behalf of, Foundation in the past three years who were classified as independent contractors and paid a set amount for each well serviced. Keeton more than meets the lenient standard for conditional certification because he substantially alleged Foundation subjected workers in a single classification to a pay practice that violates the FLSA (regardless of any individualized factors). *See* Doc. 22.

Foundation does not dispute this. *See* Doc. 27. Instead, Foundation wastes much of its Response attacking the credibility of Keeton's evidence and urging the Court to engage in a premature merits-based analysis of Keeton's employment relationship with Foundation under the economic realities test. *Id.* at 10, 12-16. But Courts do not decide the merits of a plaintiff's case at the conditional certification stage or conduct individualized analyses. For this reason, courts in this Circuit, including courts in this District, consistently refuse to analyze whether workers were properly classified as independent contractors at this stage because doing so is a merits-based inquiry more appropriately decided following the completion of discovery.[1]

Courts must instead focus on inquiries relevant to conditional certification at this juncture (i.e., whether a plaintiff provided substantial allegations of a single policy or plan alleged to violate the FLSA). Foundation fails to demonstrate any meaningful differences between the classification and

---

[1] *See, e.g., Reuda v. Facility Interiors, Inc.*, 2018 WL 6696347, at *4-5 (N.D. Tex. Dec. 20, 2018) (rejecting the application of the economic realities test at the notice stage and conditionally certifying a class of all furniture installers classified as independent contractors who did not receive overtime); *Jones v. JGC Dallas, LLC*, Civ. A. No. 3:11-cv-2743-O, 2012 WL 6928101, at *3-4 (N.D. Tex. Nov. 29, 2012) (conditionally certifying class of dancers classified as independent contractors and finding the determination of whether the workers were employees or contractors was a merits-based argument); *see also Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (Pitman, J.) (granting conditional certification of nationwide class of oilfield workers classified as independent contractors paid a day-rate regardless of job position); *Snead v. EOG Resources, Inc.*, No. 5:16-CV-1134-OLG, 2017 WL 6294875, at *5 (W.D. Tex. Feb. 14, 2017) (granting conditional certification of class of oilfield Logistics Coordinators classified as independent contractors and noting issues involving the classification of workers using the economic realities test are merits-based questions inappropriate at the conditional certification stage).

compensation of the workers at issue. "Whereas here, Plaintiffs allege that the compensation scheme is in of itself a violation of the FLSA[,] [n]o further factual inquiry is necessary." *Tamez*, 2015 WL 7075971 at *3.

**B.      Argument & Authorities**

   **1.   The Critical Inquiry at the Notice Stage is Whether There is a Particular Pay Practice Being Challenged.**

At this stage, Keeton need only provide substantial allegations Foundation's Pumpers were together the victims of "a single decision, policy, or plan," alleged to violate the FLSA. *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214, n.8 (5th Cir. 1995). Keeton met the lenient standard for conditional certification by providing substantial allegations in both his pleadings and declaration (along with other evidence) submitted in support of conditional certification that: (1) Foundation classified certain Pumpers as independent contractors, *see generally* Doc. 22-A; *see also* Doc. 1, at ¶¶ 24, 27, 29, 32, 64, 67, 77, 79; (2) Foundation paid its independent contractor Pumpers a set amount for each well they serviced with no overtime compensation, Doc 22-A, at ¶ 10; (3) all the Pumpers regularly worked more than 40 hours a week while working for Foundation without receiving overtime, *id.* at ¶ 12; and (4) all the Pumpers have similar job titles and job responsibilities, *id.* at ¶ 7.

Foundation concedes it classified its Pumpers as independent contractors and paid them a set amount for each well they serviced. *See* Doc. 27 (admitting its "independent contractors [working as Pumpers] are paid a set rate per well serviced per month"). Instead, Foundation argues that the substantial evidence presented by Keeton is not competent or sufficient to demonstrate the very policy Foundation admits it subjected its Pumpers to was widespread and uniformly applied. *See id.*

   **2.   Keeton Presented Competent Evidence Demonstrating Foundation Subjects Its Pumpers to the Same Policy and Pay Practice.**

Rather than respond to the evidence Keeton presented, Foundation objects to it as incompetent and insufficient. First, Foundation's complaints are premised on its misunderstanding of

2

the evidentiary standard of proof at the notice stage. Second, Foundation again prematurely invites the Court to engage in a merits-based analysis to assess the credibility of Keeton's declaration.

Courts in this Circuit have made clear that at the notice stage the evidence presented by a plaintiff (including any declarations) does **not** have to be admissible at trial, as the court must not analyze the merits. *See*, *e.g.*, *Parker v. Silverleaf Resorts, Inc.*, Civ. A. No. 3:14-cv-2075-B, 2017 WL 1550522, at *6 (N.D. Tex. May 1, 2017) ("affidavits or declarations offered in support of motions for conditional certification need not be based on evidence that would be admissible at trial" (citing *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 759-61 (N.D. Tex. 2013) ("Plaintiffs need not present evidence in a form admissible at trial at the notice stage."))); *Turner v. Nine Energy Servs., LLC*, Civ. A. No. H-15-3670, Doc. 29, at 12 (S.D. Tex. Oct. 4, 2016). Further, for declarations supporting conditional certification, courts only require the information contained therein be based on the declarant's personal knowledge, experiences working for the defendant-employer, conversations with other similarly situated workers, and familiarity with the defendant-employer's pay practices. *Id.* at 13-14; *see also Davis v. Capital One Home Loans, LLC*, 2018 WL 3659066, at *5 (N.D. Tex. Aug 2, 2018) ("declarants demonstrated their personal knowledge by averring that they learned about the [defendant-employer's] policies through their experiences and observations.").

Keeton's declaration (and other evidence) satisfies this low bar. Keeton repeatedly emphasizes the information contained in his declaration is "based on [his] experience with Foundation, [his] observations on location, and [his] conversations with co-workers…" Doc. 22-A. Requiring more of Keeton would inappropriately heighten the standard of proof at the notice stage. Moreover, it would be inappropriate for the Court to weigh Keeton's credibility at this stage as Foundation suggests. *See White v. Integrated Electronic Technologies, Inc.*, 2013 WL 2903070, at *6 (E.D. La. June 13, 2013) (emphasizing that courts are not tasked with resolving credibility issues at the notice stage). While

Foundation urges the Court to skip ahead and apply the heightened standard better suited at the decertification stage and to rule on the merits, doing so at this stage would be wholly premature.

### 3. Geographic Commonality is Not Required.

Foundation further claims the Pumpers are not similarly situated because they worked in different locations throughout the Country and argues Keeton, who only worked in the Central Region, has no knowledge of Foundation's practices outside of this area. The fact the Pumpers worked at other locations is wholly insufficient to prevent conditional certification. *Vargas v. Richardson Trident Co.,* 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases and finding "geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."). If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Id.* (certifying a class across multiple locations based on the affidavit of one employee that the company's policies extended to other locations); *Rueda,* 2011 WL 2566072, at *4-5; *Blake v. Colonia Savings, F.A.,* 2004 WL 1925535, at *2 (S.D. Tex. Aug. 16, 2004) (approving notice to loan officers in the defendant's Dallas office and those in remote locations based on evidence that the company's policies extended to all locations).

Critically, Foundation does not claim it classified and paid the Pumpers differently based on the locations they worked. Instead, Foundation claims—without basis— "Keeton was **unlikely** to have interacted with any other independent-contractor pumpers outside his region[,]" and, therefore, he is "**unlikely** to know about the circumstances of pumpers in regions other than the single region in which he worked." Doc. 27, at 6-7 (emphasis added). Foundation's speculation as to Keeton's knowledge merely challenges the credibility of his declaration (a merits-decision) and is unavailing and irrelevant at this stage. By claiming he is aware that Foundation classified and paid other Pumpers in the same manner as him – a fact Foundation does not dispute – based on his experience, observations,

4

and conversations with co-workers, Keeton has provided a reasonable basis from which the Court can conclude that Foundation's policy uniformly applies to multiple locations. *See* Doc. 22 A.

### 4. Whether Foundation Employed Keeton Under the Economic Realities Test is a Merits-Based Decision.

Foundation also wastes a great deal of its Response on attacking the merits of this case (claiming Keeton is not its "employee" under the economic realities test). Doc 27, at 10, 14-16. Again, courts throughout this District and Circuit almost uniformly reject the application of the economic realities test at the notice stage because "it is well-established that litigation of merits questions, including classification questions that require application of the 'economic reality' factors is inappropriate at [the notice] stage." *Snead*, 2017 WL 6294875 at *5; *see also Reuda v. Facility Interiors, Inc.*, 2018 WL 6696347, at *4-5 (N.D. Tex. Dec. 20, 2018) (rejecting the application of the economic realities test at the notice stage and conditionally certifying a class of all furniture installers classified as independent contractors who did not receive overtime); *Jones*, 2012 WL 6928101, at *3-4 (conditionally certifying class of dancers classified as independent contractors and finding the determination of whether the workers were employees or contractors was a merits-based argument); *Spence v. Irving Holdings, Inc.*, Civ. A. No. 3:10-cv-142, 2010 WL 11618078, at *2 (N.D. Tex. Sept. 23, 2010) (finding the fact the employer identified its workers as "independent contractors rather than employees is not an impediment to conditional class certification[.]").

Even if it were appropriate for the Court to analyze whether the Pumpers are similarly situated under the economic realities test at this stage (and it's not), under the lenient conditional certification standard, Keeton meets this burden by providing some minimal initial evidence the Pumpers are similarly situated concerning the economic realities test. *See Tamez*, 2015 WL 7075971 at *6 (conditionally certifying nationwide class of independent contractors paid a day-rate where, as here, the plaintiffs alleged the employer scheduled the days and hours they worked, provided them with the equipment necessary to perform their job duties, instructed them on how to perform their job duties,

and supervised their job performance); *Walker v. Honhua Am., LLC*, 870 F.Supp.2d 462, 471 (S.D. Tex. 2012) (noting even if the economic realities test applied at the conditional certification stage, plaintiff need only put forth "minimal evidence" he is similarly situated to other class members under the test).

Keeton has done this by alleging: (1) the Pumpers were financially dependent on Foundation; (2) Foundation scheduled the days and hours the Pumpers worked; (3) Foundation set the Pumpers' non-negotiable rates of pay; (4) the Pumpers reported directly to Foundation supervisors; (5) Foundation controlled the job duties performed by the Pumpers; and (6) Foundation did not require the Pumpers to invest financially to perform their job duties. *See* Doc. 22-A, at ¶¶ 4, 9-12, 14, 19; Doc. 22-B; Doc. 22-C, at ¶¶ 23-31; Doc. 22-D; Doc. 22-E; Doc. 22-F; Doc. 22-G; Doc. 22-H; Doc. 22-I; Doc 1, at ¶¶ 44-57.

### 5. Other Pumpers Exist Who May Join the Lawsuit.

Foundation claims "there is no indication that other individuals desire to opt into this action." Doc. 27, at 17. Once again, Foundation ignores substantial evidence demonstrating otherwise. Keeton specifically indicates he has "spoken with **several** former co-workers who worked for Foundation as Pumpers who were classified as independent contractors and received a flat rate for each well serviced … [that he] believe[s] … would be interested to learn about their rights and opportunity to join this lawsuit." Doc. 22-A, at ¶ 21 (emphasis added). Further, not only is Keeton aware that such individuals exist, but *Foundation* is as well. Indeed, another Pumper classified and paid in the **same** manner as Keeton previously filed a nearly identical lawsuit against Foundation alleging FLSA violations. *See* Doc. 22-C. And there can be no doubt other similarly situated Pumpers exist as evidenced by Foundation's own records, including its Pumper contractor list, which specifically identify many of the Pumpers who have yet to receive notice of this case. Doc. 22-K. Any claim by Foundation that it did not pay and classify other Pumpers in the same manner as Keeton is patently false.

Even though Keeton has done so, the Fifth Circuit made clear "plaintiffs seeking conditional certification **need not** identify other hypothetical collective action members[.]" *Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 280 (5th Cir. 2016). Requiring additional opt-in plaintiffs at the notice stage would impose a higher standard of proof than required and is routinely rejected by courts throughout the Country. *See* Doc. 22, at 8, n.5. As one court in the Southern District of Texas explained:

> The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. *See* 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the *Lusardi* approach only requires, at the first stage, that "putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *See Acevedo,* 600 F.3d at 519 (citing *Mooney,* 54 F.3d at 1213–14). Third, unlike under Rule 23, there is no numerosity requirement in a FLSA class action lawsuit under the *Lusardi* approach. *See, e.g., Badgett v. Tex. Taco Cabana, L.P.,* No. Civ. A.H 05–3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing *Mooney,* 54 F.3d at 1214 & n. 8) (stating that "at the notice stage [in a FLSA action using the *Lusardi* approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" (internal quotations omitted)). Fourth, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. *See Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Liberally construing the FLSA to effect its purposes, the court finds that it is enough for the plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.

*Villareal v. St. Luke's Episcopal Hospital,* 751 F.Supp.2d 902, 915-16 (S.D. Tex. 2010).

### 6. Keeton's Proposed Notice and Notice Procedures are Appropriate.

Foundation further urges the Court to reject Keeton's Notice, claiming: (1) it would be premature to allow Keeton to send Notice without the Parties' counsel conferring on the information included; and (2) Keeton's proposed Notice is not satisfactorily neutral. Doc. 27, at 19-21. Foundation also objects to Keeton's request to follow up via telephone with Putative Class Members whose mailed

7

notice has returned undeliverable. *Id.* at 22. Foundation made no other objections to Keeton's proposed notice procedures or methods. *Id.* at 19-22.

### 6.1 The Court Should Deny Foundation's Request to Further Confer.

Despite having had **over two months** to confer with Keeton's counsel regarding any proposed Notice, Foundation failed to do so. Foundation's request for further conference is simply another delay-tactic to run the Putative Class Members' statute of limitations and should be denied.

### 6.2 The Notice is Sufficiently Neutral.

Foundation argues Keeton's proposed Notice is not sufficiently neutral because it does not include language advising potential plaintiffs' that they may be liable for costs should they not prevail. This information is not only unnecessary, but also would likely have a chilling effect on potential plaintiffs' participation. Courts across the country have rejected employers' requests to include information in FLSA notice that may have a chilling effect on participation. *See*, *e.g.*, *Bath v. Red Vision Systems, Inc.*, No. 13-02366, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014) (rejecting a statement in the notice regarding opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs as "unwarranted" because "[s]uch statements have the potential of chilling participation in the collective action"); *Dilonez v. Fox Linen Service, Inc.*, 35 F.Supp.3d 247, 256 (E.D.N.Y. 2014) (court declined to include language about court costs and potential counterclaims, explaining that courts often reject such language "because it imposes an *in terrorem* effect"). Accordingly, the Court should deny Foundation's request to add such chilling language.

Moreover, Foundation's complaint that Keeton's proposed Notice does not provide sufficient information from which potential plaintiffs can determine if they are similarly situated is merely based on Foundation's displeasure with Keeton's proposed class definition. Simply put, Keeton's class definition includes only two elements: (1) working for Foundation as a Pumper classified as an independent contractor and (2) being paid a set amount per well. These are the **only** two elements a

potential plaintiff must meet to fall into Keeton's proposed class, and Keeton's proposed Notice clearly and concisely provides such information. Doc. 22-M, at Sec. 3.

Finally, Foundation's claim that Keeton's proposed Notice does not inform potential plaintiffs of their right to choose their own counsel is simply false. The Notice states: "You may hire an attorney of your choice." Doc. 22-M, at Sec. 4.

### 6.4   The Court Should Not Receive the Notice and Consent Forms.

Foundation urges the Court to require potential plaintiffs to return their executed Notice and Consent forms to the Court directly. Keeton's counsel is prepared for, and practiced in handling, notice forms of this nature in FLSA cases. Requiring each opt-in plaintiff who joins this case to return his form to this Court unnecessarily shifts this burden to the Court and its staff and would be inefficient and burdensome. *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 777 (S.D. Tex. 2015) (rejecting employer's request to have consent forms submitted to the court and ordering submission to plaintiff's counsel because to require submission to the court would create an undue burden on the court be inefficient and burdensome).

For this reason, Courts in this District **routinely** allow potential plaintiffs to send their completed forms to plaintiff's counsel to file. *See, e.g.*, *Sanders v. Latshaw Drilling Company, LLC*, Civ. A. No. 3:16-cv-01093-D, Doc. 25 (N.D. Tex. Sept. 12, 2016) (allowing potential plaintiffs to return their signed consent forms to plaintiff's counsel for filing with the court).

### 6.5   Keeton Should Be Allowed to Follow-Up Via Telephone with Select Class Members Whose Notice Returns Undeliverable.

Foundation also argues Keeton's counsel should not be allowed to contact potential plaintiffs via telephone because such contact would be unduly "intrusive." Keeton intends to engage via telephone using an agreed-upon and Court-approve script for follow-ups **only if** a potential plaintiff's notice has been returned undeliverable. *See, e.g.*, *Gutierrez v. Drill Cuttings Disposal Company, LLC*, 2018 WL 2128440, at *2 (W.D. Tex. May 7, 2018) (allowing plaintiff's counsel to make follow-up phone

9

calls to potential class members whose mailed or emailed contact information is not valid); *Parrish v. Premier Directional Drilling, L.P.*, 2016 WL 8673862, at *5 (W.D. Tex. Oct. 14, 2016) ("The Court agrees that should plaintiff be unsuccessful in his attempts to contact potential class members by regular mail and email, class counsel may then contact potential class members by phone using the approved script."); *see also Jaso v. Bulldog Connection Specialists, LLC*, 2015 WL 11144603, at *5-6 (allowing plaintiff's counsel to contact potential plaintiffs to confirm receipt of notice, noting that telephones "provide a more stable means of contacting a person who has moved than a mailing address"). Keeton has no intention of harassing potential plaintiffs, as Foundation seems to suggest.

**C.**   **Conclusion**

For the foregoing reasons, the Court should grant conditional certification and authorize Keeton to send Notice to the Putative Class Members.

Respectfully Submitted,

By: */s/ Lindsay R. Itkin*
**Michael A. Josephson**
Texas State Bar No. 24014780
**Lindsay R. Itkin**
Texas State Bar No. 24068647
**Josephson Dunlap, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On June 10, 2019, I served a copy of this document on all registered parties and/or their counsel of record via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

                                                       */s/Lindsay R. Itkin*  
                                                       **Lindsay R. Itkin**