UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN KEETON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) ) | CIVIL ACTION NO. 3:18-CV-01876-G |
| FOUNDATION ENERGY MANAGEMENT, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion for notice to potential plaintiffs and conditional certification under Section 216(b) of the Fair Labor Standards Act ("FLSA") ("Motion") (docket entry 22). The plaintiff, Ryan Keeton ("Keeton"), seeks conditional certification as a collective action, disclosure by the defendant Foundation Energy Management, LLC ("Foundation") of contact information of putative class members, and notice of this litigation to all potential members of the putative class. For the reasons stated below, the plaintiff's motion is granted.

### I. BACKGROUND

#### A. Factual Background

Foundation is an energy company that manages and operates oil- and gas-

producing properties, including wells, in the United States. Original Complaint ("Complaint") (docket entry 1) ¶ 25. Keeton worked for Foundation as a "pumper" from 2011 until May 31, 2018. *Id.* ¶ 10. A pumper's job is to ensure that wells continue producing. Defendant's Response to Plaintiff's Motion to Certify Class and Court-Authorized Notice ("Response") (docket entry 27) at 3. Though Keeton was originally classified as an employee, after working at Foundation for two years, the company reclassified him as an independent contractor. *Id.* at 6; Complaint ¶ 32.

Keeton alleges that Foundation misclassified its pumpers as independent contractors and paid them a set amount for each well serviced regardless of the number of hours worked. Complaint ¶ 64. Keeton further alleges that all pumpers worked more than forty hours a week and that he personally worked eight-hour shifts, seven days a week, while remaining on call twenty-four hours a day. *Id.* ¶¶ 34, 63. According to Keeton, all pumpers worked similar hours and were similarly denied overtime compensation. *Id.* ¶ 62.

B. Procedural Background

On July 20, 2018, Keeton brought this FLSA suit against Foundation for himself and other similarly situated individuals. Complaint. Keeton alleges that he and other similarly situated individuals were incorrectly classified as independent contractors. *Id.* ¶ 64. Keeton claims that, as a result of that misclassification, Foundation violated the FLSA's overtime provisions by not compensating him and

members of the putative class for hours worked in excess of forty hours per workweek. *Id.* ¶¶ 63-65. Thus, Keeton argues, he and members of the putative class are entitled to recover unpaid compensation. *Id.* ¶¶ 71, 74. Keeton also seeks liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest for himself and members of the putative class. *Id.* ¶ 93. Foundation filed its answer on August 13, 2018, denying the majority of Keeton's allegations. Defendant's Answer (docket entry 11). Foundation later filed an amended answer on April 9, 2019. Defendant's Amended Answer (docket entry 24).

On April 8, 2019, Keeton filed this motion for notice and conditional certification. Motion; Appendix to Plaintiff's Motion to Certify Class and Court-Authorized Notice (docket entry 23). Foundation filed its response to Keeton's motion on May 27, 2019. Response; Appendix to Defendant's Response in Opposition to Plaintiff's Motion to Certify Class and Court-Authorized Notice (docket entry 28). Keeton filed his reply on June 10, 2019. Plaintiff's Reply in Support of Plaintiff's Motion for Conditional Certification ("Reply") (docket entry 29). This motion is now ripe for decision.

## II. ANALYSIS

### A. The Legal Standard

Congress enacted the FLSA to provide each covered employee with "[a] fair day's pay for a fair day's work," and to protect them from "the evil of overwork as

well as underpay." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 333 (5th Cir. 2017) (quoting *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 739 (1981)) (internal quotation marks omitted). The FLSA mandates that covered employers pay wages to their employees of at least $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). The statute also mandates that covered employers not utilize employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

One provision of the FLSA, 29 U.S.C. § 216(b), provides that "[a]n action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a collective action maintained under the FLSA is pursued as an opt-in class. *Compare* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"), *with* Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice to class members include a statement "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded"); see also *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.

1975) ("Rule 23(c) provides for 'opt out' class actions. [The] FLSA . . . allows as class members only those who 'opt in.'"). Collective actions under the FLSA are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding "common issues of law and fact arising from the same alleged . . . activity." See *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Fifth Circuit has previously recognized two methods by which certification of an FLSA class can be approved. See *Mooney v. Aramco Services Company*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The first approach requires a class certification process similar to that of Rule 23. See *id.* at 1214; *Shushan v. University of Colorado at Boulder*, 132 F.R.D. 263, 266-67 (D. Colo. 1990). Under this approach, class certification under the FLSA is identical to certification of a Rule 23 class. See *Shushan*, 132 F.R.D. at 266-67. That is, to certify a FLSA class the plaintiff must establish numerosity, commonality, typicality, and representativeness. *See* Fed. R. Civ. P. 23(a). Importantly, the Rule 23 approach places the burden on the plaintiff to establish that the potential class members are "similarly situated" under the language of § 216(b) prior to notice being sent to the potential class members.

The second approach recognized by the Fifth Circuit has come to be known as the two-stage certification process. See *Mooney*, 54 F.3d at 1213. This approach

satisfies the "similarly situated" requirement of § 216(b) with a two-stage analysis: (1) the notice stage; and (2) the certification stage. See *id.* at 1213-14. At the notice stage, the inquiry by the court is considerably less rigorous than the court's initial inquiry under the Rule 23 approach. See *id.* at 1214 ("[T]his determination is made using a fairly lenient standard . . ."); see also *Zachary v. Cobalt Mortgage, Inc.*, No. 4:16-CV-0754, 2017 WL 1079374, at *2 (E.D. Tex. Mar. 22, 2017) ("Because the Court has minimal evidence before it at [the notice] stage, the determination is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan.") (internal quotation marks and citation omitted). "[T]he district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice should be given to potential class members." *Id.* at 1213-14. If the court allows for notification, the court typically creates conditional certification of a representative class and allows notice to be sent to potential opt-in plaintiffs. *Id.* at 1214.

At the second stage of this process, the court determines whether the class should be maintained through trial. Typically, the second stage is precipitated by a motion to decertify by the defendants, which is usually not filed until discovery is largely complete. *Id.* By engaging in the two-stage approach, as opposed to the Rule 23 approach, "the court has much more information on which to base its decision,

and makes a factual determination on the similarly situated question." *Id.* Should the court choose to decertify the class at the second stage, the opt-in class members are dismissed from the suit without prejudice and the case proceeds only for the class representatives in their individual capacity. *Id.*

This court has previously decided to adopt the two-stage approach for FLSA collective actions. *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007) (Fish, Chief J.) ("Based on the Fifth Circuit precedent in *Mooney* and the history within this district regarding FLSA class certifications, the court adopts the two-stage approach."). Because the court still prefers the two-stage approach, and because it appears that many Texas district courts continue to utilize it, the court adopts the two-stage approach in this case. See, e.g., *Viveros v. Flexxray LLC*, No. 4:15-CV-0343-O, 2015 WL 12916414, at *2 (N.D. Tex. May 8, 2015) (O'Connor, J.) (recognizing that the majority of federal courts, including those in the Northern District of Texas, have adopted the two-stage approach).

This case is presently at the notice stage and thus the only question before the court is whether the plaintiff has produced substantial allegations that there are other potential class members "similarly situated" with respect to their job requirements and compensation provisions. See *Ryan*, 497 F. Supp. 2d at 824-25; see also *Flores v. Act Event Services, Inc.*, 55 F. Supp. 3d 928, 934 (N.D. Tex. 2014) (Fish, J.) ("[R]eceiving conditional certification requires plaintiffs to 'produce evidence which

allows the Court to conclude that a reasonable basis exists for finding that there are other similarly situated employees who wish to opt-in to the action.'") (quoting *Dyer v. Lara's Trucks, Inc.*, No. 1:12-CV-1785-TWT, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013)).

For the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions. See *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). "The positions need not be identical, but similar." *Barnett v. Countrywide Credit Industries, Inc.*, No. 3:01-CV-1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (Lynn, J.) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994)). The "similarly situated" requirement of § 216(b) is less stringent than the "similarly situated" requirement of Federal Rules of Civil Procedure 20 and 42. See *Grayson v. K Mart Corporation*, 79 F.3d 1086, 1096 (11th Cir.), *cert. denied*, 519 U.S. 982 (1996). "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Donohue v. Francis Services, Inc.*, Civ. A. No. 041-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) (quoting *Whitworth v. Chiles Offshore Corporation*, Civ. A. No. 92-1504, 1992 WL 235907, at *1 (E.D. La. Sept. 2, 1992)).

B. Application

1. Conditional Certification

In this case, Keeton has proposed the following class for conditional certification: "[a]ll Pumpers who worked for, or on behalf of, Foundation in the past three (3) years who were classified as independent contractors and paid a set amount for each well serviced." Motion at 1. Keeton's motion is supported by his own declaration and by evidence of a previous suit brought against Foundation by one of its former workers, Perdue. Plaintiff's Declaration (docket entry 23-1); Original Complaint, *Perdue v. Foundation Energy Management, LLC*, No. 3:16-CV-1722-C (N.D. Tex., filed June 23, 2016) ("*Perdue* Complaint") (docket entry 23-3). Perdue's claim was almost identical to Keeton's claim in the present case. *Perdue* Complaint.

Foundation makes several arguments against conditional certification and notice in its response, which the court will now address.

In its response, Foundation argues that under the economic-realities test, Keeton does not offer sufficient evidence to support his misclassification claim. Response at 10-11. The economic realities test looks to whether the individual in question is an employee or an independent contractor. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). This argument, however, is premature at the notification stage. The question of whether the plaintiff can demonstrate an employer/employee relationship is a merits-based argument. *Jones v.*

*JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012) (Ramirez, M.J.). The court does not address the merits at this stage of litigation. See *Frazier v. Dallas/Fort Worth International Airport Board*, 285 F. Supp. 3d 969, 973 (N.D. Tex. 2018) (Lynn, Chief J.). The court therefore declines to address whether Keeton can demonstrate that he was misclassified as an independent contractor.

Foundation also argues that Keeton's allegations lack competent evidentiary support. Keeton is currently the only plaintiff and he has not yet identified any other potential plaintiffs for this class certification. In addition, Keeton has not provided a declaration from any other pumper or provided evidence involving wells he did not service; according to Foundation, these are fatal deficiencies. Response at 12-13. It is true that Keeton's motion is not accompanied by the usual affidavits and declarations in support of a motion for notice and conditional certification, and that no other plaintiff has opted into the suit to date. The record shows, however, that another pumper, Perdue, brought a collective action suit against Foundation in 2016. *Perdue* Complaint. Perdue's claim was almost identical to Keeton's. *Id.* There, Perdue claimed that he and other similarly situated workers worked long shifts, seven days a week, in excess of forty hours per workweek. *Id.* ¶ 1.

In past cases, courts have granted motions for notice and conditional certification with little evidentiary support, such as a single declaration from a single

plaintiff.  See, e.g., *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2011 WL 609884, at *3, *5 (N.D. Tex. Feb. 14, 2011) (Kinkeade, J.) (granting conditional class certification after plaintiff pleaded that she had "personal knowledge" that she and potential class members were similarly situated); *Neagley v. Atascosa County EMS*, No. Civ. A. SA04CA0893XR, 2005 WL 354085, at *3-4 (W.D. Tex. Jan. 7, 2005) (granting conditional class certification even without an affidavit from the plaintiff). There is no need for a plaintiff to "identify and obtain preliminary support" from potential class members in order to give them notice.  *Black*, 2011 WL 609884, at *3. The burden at the notice stage is a lenient one because it is expected that only "minimal" evidence is available to the court.  See *Mooney*, 54 F.3d at 1214.  Though the court may later find that the putative class members and Keeton are not similarly situated, "notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues of the case." *Frazier*, 285 F. Supp. 3d at 973 (quoting *Jones*, 2012 WL 6928101, at *4) (internal quotation marks and citation omitted).  The court thus concludes that Keeton has provided competent evidence for conditional certification at this stage.

Foundation further argues that Keeton's evidence fails to establish that he and the members of the putative class are similarly situated.  Foundation asserts that pumpers have different duties that can differ based on, for example, geographic location.  Response at 2.  According to Foundation, its pumpers differ in their degree

of control, relative investment, degree of opportunity for profit or loss, skill and initiative required to perform duties, and degree of permanency.  Response at 15-16.  Foundation is correct that, even at stage one of the Fifth Circuit's two-stage certification process, Keeton must establish that he and the members of the putative class are similarly situated with respect to their job requirements and pay provisions.  However, the "positions need not be identical, but similar." *Barnett*, 2002 WL 1023161, at *1 (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp 941, 947 (M.D. Fla. 1994)).  Indeed, the court expressly reserves the more searching factual determination for stage two, after discovery is complete.

    Keeton provides evidence that the members of the putative class have (or had) the same essential job duties in every location, such as maintaining wells and ensuring their continued production, and that some members of the putative class are (or were) paid pursuant to a similar per-well compensation plan.  Plaintiff's Declaration ¶¶ 7, 10, 16; *Perdue* Complaint ¶¶ 16-18.  Although Foundation argues that each well has different needs and some pumpers perform different tasks, at base, the members of the putative class are (or were) all tasked with one primary objective regardless of geographic location: ensuring that Foundation's wells continued to produce.  This nexus, the existence of a single primary objective shared by Keeton and potential class members, is sufficient at stage one of the certification process.  See *Zachary*, 2017 WL 1079374, at *2.

Regarding differences in pay between individual pumpers, Foundation points to differences in pay dependant on individual negotiating skill, prevailing market rates, and the provision of additional services. Response at 5, 15. Keeton, however, provides evidence—and Foundation agrees—that there is a class of independent contractor pumpers who are (or were) paid by Foundation in essentially the same way—based on the number of wells serviced regardless of the number of hours worked. Plaintiff's Declaration ¶ 10; *Perdue* Complaint ¶ 16; Response at 5. Furthermore, Keeton provides evidence that any additional services are billed separately from pumper duties, making it simple to separate compensation for pumper work from compensation for additional services. Plaintiff's 2016 Well Services Contract at 7 (docket 23-4). Keeton also provides evidence that Foundation subjected the members of the putative class to a common policy or plan whereby they were originally classified as employees, but then improperly reclassified as independent contractors despite doing the same work. Plaintiff's Declaration ¶¶ 6, 9-10, 12-14, 17, 19-20; *Perdue* Complaint ¶¶ 16, 19-33.

Foundation argues that Keeton has failed to show that other class members are interested in joining the suit. Response at 7. However, pumpers often work alone at remote well sites without cell phone reception or significant supervision, and they have little or no opportunity to interact with other pumpers with the possible exception of regional safety meetings. Plaintiff's Declaration ¶ 22; *Perdue* Complaint

¶ 23; Response at 4, 7. Other courts have noted that under such working conditions, e.g. solitary working conditions, remote work sites, no centralized office or official to report to, the requirement to show that other class members are interested in joining the suit before notice creates a "chicken and egg" problem. See, e.g., *Coffin v. Blessey Marine Services, Inc.*, No. H-11-0214, 2011 WL 13242968, at *3 (S.D. Tex. Jul. 28, 2011) (allowing conditional certification where members of the putative class did not report to an office and so they could not become acquainted with each other, and they were required to travel on towboats throughout the United States as part of their job); *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. Jul. 18, 2011) (allowing conditional certification where employees did not report to an office and so they could not become acquainted with each other, and they traveled directly to work sites from their homes). As such, courts often do not require a plaintiff working under such conditions to show, at the notice stage, that other particular class members are interested in joining the suit. *Gibson*, 2011 WL 2837506, at *7. Considering what the record shows about the circumstances of Keeton's employment, the court concludes that Keeton has met his burden to show that other class members are interested in opting into the suit at this stage.

After due consideration, the court concludes that Keeton has met the lenient burden of establishing, at stage one of the two-stage certification process, that he and the putative class members are similarly situated in terms of job requirements and

compensation. Cf. *Hlavaty v. Integrated Production Services, Inc.*, SA-16-CA-949-RP, 2017 WL 2999711, at *3-4 (W.D. Tex. June 7, 2017) (allowing conditional certification for a class of hourly oilfield workers who performed similar job duties, such as maintaining and operating equipment used at oilfield well sites, and who worked similar hours at all oilfield locations); *Ryan*, 497 F. Supp. 2d at 822-23, 825 (finding that the plaintiffs met the burden of establishing that they were similarly situated to potential class members where the plaintiffs sought certification of a class of various types of workers who all performed the same basic tasks at various healthcare staffing companies).

### 2. Scope of the Class

Keeton has also successfully pled that the potential class members, from a number of different regions, are (or were) subject to a common policy or plan. Keeton has proposed the following class for conditional certification: "[a]ll Pumpers who worked for, or on behalf of, Foundation in the past three (3) years who were classified as independent contractors and paid a set amount for each well serviced." Motion at 1. Foundation expresses concern that the class as proposed includes entities that cannot, as a matter of law, be employees, because "pumpers" could include limited liability companies and sole proprietorships. Response at 14. Foundation's concern is well taken. The FLSA defines "employee" as an "individual employed by an employer" whereas it defines "person" as "an individual, partnership,

association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §§ 203(a), 203(e)(1). Accordingly, to avoid including any improper entities in the class (such as limited liability companies or sole proprietorships), the court now conditionally certifies a class consisting of the following individuals: "[a]ll *individuals with the job title of "Pumper"* who worked for, or on behalf of, Foundation in the past three (3) years who were classified as independent contractors and paid a set amount for each well serviced."

The defendant will have an opportunity to renew many of its arguments and challenge the propriety of maintaining the class through trial at stage two—after the discovery process—through a motion to decertify. At that stage, with more facts in hand, the court will be in a better position to conduct a more searching inquiry. *Mooney*, 54 F.3d at 1214.

### 3. Notice to Putative Class Members

Foundation raises several objections to Keeton's proposed notice and the proposed methods of dissemination of the notice. Response at 22. Specifically, regarding dissemination, Foundation objects to allowing Keeton to contact by telephone pumpers who cannot be reached by mail or email. In addition, Foundation objects to language implying that Foundation would have to post the notice and consent forms. *Id.* Keeton's reply does not make it clear if Keeton is in fact requesting that Foundation post the notice and consent forms. Keeton otherwise

maintains that his proposed notice and proposed methods of dissemination are appropriate. Reply at 7.

The plaintiff and defendant shall confer in an attempt to resolve their remaining differences regarding the proposed notice and the appropriate method(s) of dissemination of the notice. Within fourteen (14) days from the date of this memorandum opinion and order, Keeton shall confer with Foundation and subsequently either (1) submit a joint proposed class notice to the court for its consideration, and shall include a separate document detailing the agreed upon method(s) of notice dissemination; or (2) file a motion for approval of an opposed notice, and include a separate document containing proposed method(s) of dissemination, after which the normal briefing schedule shall follow.

## III. CONCLUSION

For the reasons stated above, the plaintiff's motion for conditional certification is GRANTED. No later than fourteen (14) days from the date of this memorandum opinion and order, the plaintiff shall electronically file either (1) a joint proposed class notice, and include a separate document detailing the additional agreed upon information described above, or (2) a motion for approval of an opposed notice, and include a separate document containing the plaintiff's proposals, as described above.

**SO ORDERED**.

January 30, 2020.

_____
**A. JOE FISH
Senior United States District Judge**